FILED
CLERK, U.S. DISTRICT COURT
-1 MAY 02 PM 4:59
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

Steven A. Christensen, #5190
Law Offices of Steven A. Christensen
Attorney for Plaintiff
3381 W. Star Fire Road
So. Jordan, UT 84095
Telephone: (801) 255-8727

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Steven A. Christensen, | |
| Plaintiff, | SUPPLEMENTAL RESPONSE AND MEMORANDUM TO DEFENDANTS MOTION TO DISMISS |
| vs. | |
| GBI, Capital Partners, Inc., a New York corporation, Ladenburg Thalmann Financial Services, Inc., a Florida corporation, GBI Capital Management Corporation, a Florida corporation, Gaines Berland, Inc., a New York corporation, Edward Daigneau, and GBI, Inc, | Case No. 2:01CV-0705K  Judge Dale A. Kimball |
| Defendants, | |

**COMES NOW** the Plaintiff and by way of supplemental objection to the defendant's Motion to Dismiss and Compel Arbitration, shows to the Court as follows:

### FACTUAL BACKGROUND AND LEGAL ARGUMENT

In the later part of 1999 the plaintiff was contacted in the State of Utah via telephone on numerous occasions by defendant Edward Daigneau soliciting plaintiff to move his retirement account to Gaines Berland brokerage. Plaintiff, after receiving repeated solicitation telephone contacts by defendants, agreed to transfer his retirement account to Gaines Berland. Never, during any of the initial discussions was the name Bear Stearns mentioned, however, in requesting copies of his account information in early 2001, plaintiff received a copy of Exhibit A, which shows that he was contacted via "prospecting." The information was filled out on a Bear Stearns document

after the March 18 information, which was on Gaines Berland letterhead had already been submitted to defendants. Exhibit A. was never identified or provided to plaintiff prior to the fall of 2001. However, upon examination of the information which was mistakenly taken down by Eddie Daigneau, this is the same information that was used by all of the defendants from that time forward. The document contains plaintiffs name, misspelled as Christen. The document identifies the account as an IRA, however it misidentifies the social security number, which, was corrected by plaintiff, and which correctly appears on the Customer Verification for Report of New Account/Update, with the initials of Joseph Angelone.

Joseph Angelone, Gary Gilbert Christine Walsh, and Patricia Giglia, all contend in their affidavits that standard business practices of Gaines Berland were followed, and *ergo*, the argument of defendants, that a document upon which they are relying to compel arbitration, which document is not even their document, nor is it supported by any affidavits of any Bear Stearns officials, was signed by plaintiff. Yet these same business practices which assure that everything is performed correctly, are the same business practices, which consistently used an incorrect social security number for plaintiff, incorrectly spelled their customers name, and refused to follow his investment objectives, as outlined on *their* customer forms, and instead sold off plaintiffs well diversified portfolio and acted contrary to their own documents, as a general business practice.

The Court should take additional note of the fact that the first time plaintiff ever recalls seeing the Bear Stearns customer agreement document, which forms the basis for asserting that the action should be dismissed and forced into arbitration, was on or about September 4, 2001. Additionally, as was previously noted, the defendants have no agreement with plaintiff to arbitrate any disputes. The basis upon which the Defendants are seeking to dismiss this action is based upon the Bear Stearns Customer Agreement, the document which is at dispute here. Roy Aronson, an employee of Bear Stearns, in his affidavit of September 24, 2001, notes that Bear Stearns performs the "ministerial" functions of GBI, and that it is a practice of Bear Stearns to have a Bear Stearns

Customer Agreement filled out by clients of the broker "whose accounts and securities are to be cleared by Bear Stearns." GBI, is not a captive client and it can have its accounts cleared through a number of clearing agents. Nowhere in GBI's documents does it specify that it will use Bear Stearns and that it is mandatory to fill out a Bear Stearns Customer Agreement. In fact, Roy Aronson, makes no allegation that the document in question was presented by Bear Stearns to plaintiff, or that the signature on the document is that of the plaintiff.

## ARGUMENT

The Court should note that GBI claims no purported contractual relations between themselves and the plaintiff requiring arbitration, but rather on a third party beneficiary claim in a customer agreement document purportedly entered into between Bear Stearns and the Plaintiff. As was previously noted, in the matter of Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332 (1987), the distinction between the parties contractual agreements is significant. In *Shearson*, the parties consented between themselves to resolve any issues via the arbitration process, which is not the situation in the case before this Court.

Defendants contend that burden of proving the forgery is upon the plaintiff. Plaintiff has met that burden. Immediately upon first seeing the Bear Stearns Customer Agreement the plaintiff notified Joseph Pickard, that he had never seen this document. Defendants handwriting expert has opined that from her review of the copies supplied to her, "there is a high degree of probability" that the Bear Stearns Customer Agreement was signed by the same person who signed the Customer Verification for Report of New Account/Update, dated March 18, 2000, the Bear Stearns For W-9, dated March 18, 2000, the Gaines, Berland Explanation of a Margin Account, dated March 18, 2000 and the summons and discovery request submitted by Steven A. Christensen, dated August 8, 2001. However, upon a review of these same documents examined by Linda Cropp, along with original signatures of known additional known exemplars of the signature of Steven A. Christensen, Marilynn Gillette, an expert document examiner has conclusively determined that the Bear Stearns

Customer Agreement document, is "a forgery."

The Court should additionally take into consideration when the Bear Stearns Customer Agreement first appeared. In March of 2001 Plaintiff explained that he intended to commence civil litigation if the deficiencies in his account were not remedied. GBI took no action and no Bear Stearns documents were provided saying you have to arbitrate if you have a disagreement with our practices. In April 2001, plaintiff again requested verification of all of the documents contained in his account, and Joseph Pickard assured plaintiff that they had forwarded everything in the files with the exception of internal notes/documentation regarding conversations with customers. The Bear Stearns Customer Agreement certainly could not be classified as an internal document regarding conversations with their customers. There was still no copy of the Bear Stearns customer agreement produced, which if it did exist on that date surely would have been produced.

Defendants have already demonstrated by their affidavits supporting the business practices GBI follows, that numerous errors are present in their day to day activities. Even when those errors are called to their attention they did not address the errors, nor correct their business practices. They wanted to generate trades and trade in areas where they made the market or could generate the greatest commissions. They certainly established by their own affidavits that they did not follow the requests of their customers. And in fact, they have demonstrated that they have "checked" documents received by them, determined they were accurate, and approved customer-made corrections. (See affidavits of Joseph Angelone ¶ 5, Gary Gilbert ¶ 5).

The Bears Stearns - Gaines Berland, agreement does not require GBI customers to also be Bear Stearns customers. As was noted before, in paragraph one Bear Stearns states that it will "...carry *such* of your customer accounts *(Gaines, Berland)* as *will be* mutually agreed by the parties hereto." (Emphasis added) It is additionally of specific interest to note that the agreement between GBI and Bear Stearns, specifically mandates, at paragraph fourteen, "Errors, misunderstandings or

controversies, except those specifically otherwise covered in this Agreement, between the Accounts[1] and you or any of your employees, which shall arise out of your acts or omissions ... shall be your sole and exclusive responsibility."[2] The agreement goes on further to indicate that Gaines, Berland is not an agent of Bear Stearns. GBI is solely responsible for its actions, inactions and has agreed to indemnify Bear Stearns.

If the agreement in question is upheld, GBI should be compelled to add as an indispensable party to the action, Bear Stearns. Nothing in the April 30, 1985 agreement between GBI and Bear Stearns requires the plaintiff to name Bear Stearns as a party, or requires that plaintiff is obligated to arbitrate his dispute with the defendants. In the unsigned July 25, 1994 addendum, which Plaintiff will assume for purposes of argument has been properly executed by the parties thereto, it specifies that Gaines, Berland will be "...solely responsible for the conduct of the Customer's account, including but not limited to the responsibilities to know your customer, determine the suitability of all transactions, obtain all proper documentation (including all new account documents), and conduct your own credit review of the Customer."

Contract principles dictate very basic fundamental provisions in order to establish a meeting of the minds, or mutual assent between the parties, which is necessitated to form a binding contractual relationship between the parties. Where one of the purported parties to the agreement denies having seen the document, it brings the credibility of the contract come into direct consideration. The Bear Stearns customer contract has a space provided in the contract wherein Bear Stearns is to acknowledge being bound by the contract terms, this provisions is located on the second page of the agreement and states:"ACCEPTED AND AGREED TO:_____ THE

---

[1]. Accounts are defined in paragraph one of the agreement between Bear Stearns and Gaines, Berland as follows: "Bear Stearns will carry such of your customer accounts as will be mutually agreed by the parties hereto. These accounts are hereinafter called the "Accounts" and the legal and beneficial owners thereof are hereinafter call the "Customers."

[2] Referring to Gaines, Berland.

BEAR STEARNS COMPANIES INC. AND ITS SUBSIDIARIES". The documents provided as a basis for mandating arbitration in New York is void of any signature indicating the agreement is binding on Bear Stearns, and *ipso facto*, any Bear Stearns subsidiary or "third party beneficiary" to the contract.

In Ohio Pure Foods, Inc. v. Christine M. Barbe, 548 Pa. 373, 697 A.2d 252, (1996), the court addressed the issue of an alleged forged guarantee, the Court found

> "in Pointing to this court's decisions in Reliance Ins. Co. v. Liberati, 489 Pa. 591, 414 A.2d 1049 (1980) and Long v. Morningstar, 212 Pa. 458, 61 A. 1007 (1905), Appellant submits that our case law does not require any more than what she has stated in her Petition. In Liberati, this court found that testimony that an individual did not sign an agreement, that the signature was not hers, that she had not authorized anyone to sign on her behalf, that she did not appear before the notary and testimony that the notary did not remember her, required that the judgment be opened and that the matter go to the jury pursuant to Pa.R.C.P. 2959(e). Likewise, in Long, a rule to show cause was granted where the petitioner alleged that he had not signed a note, had not authorized any person to sign the note, or owed any debt to the creditor. *See also*, Austen v. Marzolf, 307 Pa. 232, 161 A. 72 (1932)(allegation of signature being a forgery, made without knowledge, direction, or consideration, was sufficient for granting of rule to show cause)."

The Court found in Barbe, that it is clear that forgery has been held to be a meritorious defense and that only a minimal offering is needed to satisfy the requirements for the issuance of a rule to show cause, and because the petitioner in that matter satisfied her initial burden of setting forth *prima facie* grounds for relief. In the matter before this Court, plaintiff has met the burden of establishing that his signature is not that contained on the Bear Stearns Customer Agreement. Plaintiff had never seen such document and could not say how, why or who penned his name. Accordingly, plaintiff moves this Court to deny the defendants Motion to Dismiss and Compel Arbitration.

Respectfully submitted this 1st day of May 2002.

Law Offices of Steven A. Christensen

Steven A. Christensen, #5190
3381 W. Star Fire Road
So. Jordan, UT 84095
(801) 255-8727

**CERTIFICATE OF MAILING**

I hereby certify that I hand delivered a true and correct copy of the foregoing documents to counsel of record, at the following address:

David E. Hardy
Hardy & Allen
818 East South Temple
Salt Lake City, Utah 84102

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.